(57 App. Div. 367.)

PEOPLE ex rel. DUNN v. HAM, Commissioner.

(Supreme Court, Appellate Division, Third Department. January 24, 1901.)

MUNICIPALITIES—POWER TO ABOLISH OFFICE IN POLICE FORCE.

Under charter of cities of the second class (Laws 1898, c. 182, § 177), providing that the police force as to its component parts shall remain in each city as now constituted until the same shall be changed by the common council thereof, which is given power to determine by ordinance the number of police and the classes or grades in which they shall be divided, but the number of members shall not be increased without approval of the board of estimate and apportionment, etc., and no officer shall be removed without a hearing on charges preferred against him, an ordinance abolishing the position in the police force known as "station-house keeper," which by Laws 1870, c. 77, tit. 12, § 2, is classified as a division of the police force, is void, the power to "determine" the number of the force not giving the power to abolish a division thereof.

Kellogg and Smith, JJ., dissenting.

Appeal from special term, Albany county.

Application by the people, on the relation of Thomas P. Dunn, for writ of mandamus to compel Fred C. Ham, commissioner of public safety of the city of Albany, to reinstate relator in the position of station-house keeper of the police department of the city of Albany. From an order directing a peremptory writ to issue (66 N. Y. Supp. 264), defendant appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Arthur L. Andrews, for appellant.

James J. Farren, for respondent.

EDWARDS, J. The relator, Thomas P. Dunn, was one of the station-house keepers in the police department in the city of Albany from July 1, 1892, to June 1, 1900, when he was notified by the appellant, as commissioner of public safety of the city of Albany, that his services were no longer required by reason of the adoption of an ordinance of the common council abolishing the position of station-house keeper, and his name was thereafter stricken from the roll of membership of the department. The question before us is the power of the common council of the city of Albany to abolish, by ordinance, the position of station-house keeper, and the determination of that question requires an examination of the statutes relating to the police of that city. The police department of the city of Albany was organized under title 12 of chapter 77 of the Laws of 1870, and section 2 of that title reads as follows:

"The powers and duties connected with and incident to the police government of the city of Albany shall be as hereinafter more especially provided for, vested in, and exercised by a board of police commissioners, and by a police force composed of a chief of police, captains of police, sergeants of police, patrolmen of police, station-house keepers, and one surgeon of police."

Section 3 provides that the police board of the city of Albany shall consist of five commissioners; and section 6, as amended by chapter 495, Laws 1873, confers upon the police board "exclusive power to appoint one chief of police, * * * not to exceed seven captains of police, and not to exceed twelve sergeants of police; * * * also

patrolmen not to exceed one hundred in number, five station-house keepers, supernumerary patrolmen not to exceed twenty in number, and one surgeon." Under the authority conferred in the foregoing sections, five station-house keepers were appointed by the board of police commissioners, and held their positions until June 1, 1900. It was further provided by section 9 of said title that no member of the police force should be removed except after a hearing upon written charges. On January 1, 1900, chapter 182 of the Laws of 1898, entitled "An act for the government of cities of the second class," went into operation, and since that time the police department of the city of Albany has been in charge of the appellant as commissioner of public safety. Section 483 of chapter 182 of the Laws of 1898 reads:

"Nothing contained in this act shall be construed to repeal any statute of the state or ordinance of the city not inconsistent with the provisions of this act, and the same shall remain in full force and effect, when not inconsistent with the provisions of this act, to be construed and operated in harmony with the provisions of this act."

Section 177 provides that:

"The police force shall, as to its component parts, remain in each city as now constituted until the same shall be changed by the action of the common council thereof, which has power, at all times, by ordinance, to determine the number of the members of the police department, and the classes or grades into which they shall be divided, but the number of members of the police department shall not be increased without the approval of the board of estimate and apportionment by a resolution adopted by at least four affirmative votes of said board."

Section 192 provides that:

"All officers and members of the police department, when this act takes effect, shall remain and continue in their respective positions until their positions shall become vacant by death, resignation or by removal under procedure hereinbefore set forth."

Section 180 provides that:

"All the members of the police force, subject to the power of removal hereinafter specified, shall hold their respective offices during good behavior, or until by age or disease they become permanently incapacitated to discharge their duties."

And section 184 provides for the removal of a member of the police force after a hearing upon charges preferred against him.

The foregoing sections of chapter 182 of the Laws of 1898, known as the "Charter of Cities of Second Class," provide for the continuance of the police force of the city of Albany as organized when the act went into effect on January 1, 1900, except so far as any authority to change the same is conferred by the said act. The appellant's justification for the removal of the relator is an ordinance passed by the common council of the city of Albany on May 21, 1900, entitled "An ordinance decreasing the number of members of the police department by abolishing the position of station-house keeper," which reads as follows:

"Section 1. The position in the police force known as station-house keeper is hereby abolished.
"Sec. 2. This ordinance shall take effect immediately."

The authority to pass this ordinance abolishing the position of station-house keeper in the police force is claimed by the appellant to be

conferred by that portion of section 177, above quoted, which reads as follows:

"The police force shall, as to its component parts, remain in each city as now constituted until the same shall be changed by the action of the common council thereof, which has power, at all times, by ordinance, to determine the number of the members of the police department, and the classes or grades into which they shall be divided."

The contention of the appellant is that the power conferred by this section upon the common council "to determine the number of members of the police department" confers the power by ordinance to abolish the position of station-house keeper. It will be seen that under the above-cited provisions of law creating the police department of the city of Albany the position of station-house keeper was created and is recognized as a component part of the police force of that city. The question is, did the power to determine the number of members of the police department confer the power to abolish a component part of the department created by statute? I think the proposition that the power to determine the number of members of a position created by statute confers the power to abolish the position entirely carries with it its own refutation. The clear intention of section 177 was to authorize the common council, by ordinance, not to abolish the positions created by statute, and whose continued existence was in this statute provided for, but to determine—that is, to fix definitely—the number of the members of the various positions in the police department as in the judgment of the common council the needs of the city might require. It authorizes the decrease or increase of the number of such members, but the increase requires the approval of the board of estimate and apportionment. If, under the power conferred upon the common council by this clause, it has authority to enact an ordinance abolishing the position of station-house keepers, and legislate out of office the persons holding those positions, then it may, by like authority, abolish the positions of captains of police, sergeants of police, and patrolmen, and practically abolish the whole police department, for whose continued existence the statute has expressly provided; and may legislate out of office all the persons holding those positions, notwithstanding the express provisions of the statute that they shall be continued in their positions, and shall not be removed except after a hearing on charges preferred. The counsel for the appellant contends that the legislature has the power to abolish a position in the police department, and may confer such power upon the common council. If it had been the intention of the legislature to confer such broad power upon the common council, it is hardly conceivable that such intention would not have been expressed in clear and explicit language; and, in the absence of such expression, such power cannot be reasonably implied. The construction which I have given to section 177 finds support, if any were needed, in section 203 of the same act, relating to the fire department, which provides that officers and members of that department shall, except as thereinbefore specified, and subject to the power of removal therein specified, "hold their respective places during good behavior, and so long as they are competent to discharge the duties thereof, subject to the power of the com-

mon council to abolish any office or to diminish the number of members." Express power is here given to the common council to abolish any office in the fire department. The legislative intent to confer such power is clearly expressed, and the absence of such an expression with regard to the members of the police department is quite unmistakable evidence of. an absence of intention to confer similar authority with regard to members of that department. It will also be seen that in this section a distinction is observed between the abolition of an office and a diminution in the number of members. Our conclusion is that the order appealed from was right, and should be affirmed.

Order affirmed, with $10 costs and disbursements. PARKER, P. J., and MERWIN, J., concur.

KELLOGG, J. (dissenting). Section 177 of the charter of cities of the second class authorizes the common council "to determine the number of members of the police department, and the classes or grades into which they shall be divided." I think this should be construed liberally. I do not think the legislature intended to reserve the exclusive power to fix the number of station-house keepers to be maintained in the city of Albany, or to forbid to the common council the right to determine for itself how many the changing needs of the city might require. Power to reduce or increase the number of members of the police force and to classify and grade them has such an intimate relation to the needs for station-house keepers that the full benefit of this power can be attained, it seems to me, only by holding that the common council has also the power to increase or diminish the number of station-house keepers.

SMITH, J., concurs.